```
                    UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

DONNA L. BILGER,                      :
                                      :CIVIL ACTION NO. 3:12-CV-1109
          Plaintiff,                  :
                                      :(JUDGE CONABOY)
          v.                          :
                                      :
MICHAEL J. ASTRUE, COMISSIONER        :
OF SOCIAL SECURITY,                   :
                                      :
          Defendant.                  :
                                      :

---

## **MEMORANDUM**

Here we consider Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401–433. (Doc. 1.) The Administrative Law Judge ("ALJ") who originally evaluated the claim found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations and denied Plaintiff's claim for benefits. (R. 13, 17.) With this action, Plaintiff argues that the ALJ's determination is error for two reasons: 1) the RFC is not based on substantial evidence (Doc. 6 at 7); and 2) the Vocational Expert's testimony did not constitute substantial evidence because the ALJ's hypothetical did not adequately portray the full extent of Plaintiff's limitations (*id.* at 14). For the reasons discussed below, we conclude Plaintiff's claimed errors are without merit and, therefore, we deny her appeal of the Commissioner's decision.

## **I. Background**

Plaintiff protectively filed for DIB on June 3, 2008. (R.

122.) Plaintiff's date of birth is May 2, 1953. (R. 126.) She is married with no minor children. (*Id.*) She claimed disability beginning on August 1, 2006 (*id.*), alleging an inability to work based on arthritis, diabetes and nerve damage (R. 138). She added that she could not stand and could not sit for long, she was in constant pain and was unable to clean her house or go up and down stairs. (*Id.*) Plaintiff had past work as a coffee hostess and box packer. (R. 139.) She has a ninth grade education. (R. 29.) Plaintiff's "date last insured" is September 30, 2006. (R. 10.)

The Social Security Administration denied Plaintiff's application by decision dated August 1, 2008. (R. 69-73.) On August 6, 2009, Plaintiff filed a timely Request for Hearing before an Administrative Law Judge. (R. 74.) On May 11, 2010, ALJ Donna M. Graffius held a hearing at which Plaintiff and a vocational expert ("VE") testified. (R. 22-54.)

In response to the question of whether she was able to work as a box packer or coffee hostess in 2007 after her surgeon released her, Plaintiff responded that she could not because she "couldn't stand that long." (R. 37.) Plaintiff also stated she could not have performed any kind of work activity at that time because she never knew from day to day how she was going to feel. (R. 37-38.) She reported that she could do laundry and dishes on a good day but otherwise needed help with housework. (R. 38.) Plaintiff stated that she could do her own laundry and grocery, and visit with

2

friends and relatives back in August of 2007. (R. 38-39.) When asked by her attorney about the period of time when her doctor had released her post surgery and whether she had increased her activities, Plaintiff responded that she felt better for a period of time, she did not run the sweeper, and her standing and walking remained limited. (R. 40.) She confirmed that she returned to her doctor due to increasing pain. (R. 41.) Plaintiff added that in the summer of 2007 she could be on her feet for ten to fifteen minutes and then pain would shoot down her left leg and her sleep was interrupted due to pain. (R. 41-42.) Plaintiff also testified that during the summer 2007 time period her sugar level was elevated due to diabetes, that she was tired all the time, was nauseated, had headaches, and experienced a loss of feeling in her feet and numbness in her fingertips. (R. 45-46.)

Following Plaintiff's testimony, the ALJ asked the VE questions assuming a hypothetical claimant with the same age, education and work experience as Plaintiff who would be limited to light work activity with additional limitations. (R. 49.) The VE stated there were light duty jobs in the region such a claimant could perform, jobs which could be performed sitting or standing depending on how the claimant felt. (R. 49-50.)

Finally, the ALJ asked what would be typically expected of employees in terms of absences, work breaks and time on task expectations. (R. 51.) The VE testified there would be five

3

eight-hour days with ten minute rest periods in the morning and afternoon, a lunch period of thirty to sixty minutes, and an employer would tolerate five unexcused absences per year apart from medical leave and vacation time. (R. 51.) The VE added that exceeding the customary limits would eliminate the jobs he had cited for the hypothetical claimant. (R. 51.)

Plaintiff's attorney followed up with a question regarding whether the jobs he had identified were classified as light based on the amount of weight lifted on the job. (R. 51.) The VE responded in the affirmative. (R. 51-52.)

Plaintiff's attorney then noted that, although there was a release from the doctor in the middle of the time period, shortly after the release Plaintiff again experienced back pain which eventually led to a second surgery--a situation indicating a continuation of problems from the date last insured. (R. 52.)

By decision of May 19, 2010, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17.) He made the following findings of fact and conclusions of law:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2006.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2006 through her date last insured of September 30, 2006 (20 CFR 404.1571 et seq.).

4

3. Through the date last insured, the claimant had the following severe impairments: lumbar stenosis at L4-5, status post laminectomies and bilateral foraminotomies at L4-5, status post right shoulder arthroscopy with subacromial decompression, and diabetes mellitus (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, September 30, 2006, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she was limited to occasional walking and standing, and postural maneuvers, such as stooping, kneeling, crouching, crawling, and climbing ramps and stairs. Further, the claimant needed the option to sit and stand during the work day, every 15-20 minutes. Finally, the claimant had to avoid overhead reaching with the right upper extremity.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 2, 1953 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404-1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.   Transferability of job skills is not an
                    issue in this case because the
                    claimant's past relevant work is
                    unskilled (20 CFR 404.1568).

               10.  Through the dated last insured,
                    considering the claimant's age,
                    education, work experience, and residual
                    functional capacity, there were jobs
                    that existed in significant numbers in
                    the national economy that the claimant
                    could have performed (20 CFR 404.1569
                    and 404.1569(a)).

               11.  The claimant was not under a disability,
                    as defined in the Social Security Act,
                    at any time from August 1, 2006, the
                    alleged onset date, through September
                    30, 2006, the date last insured (20 CFR
                    404.1520(g)).

(R. 12-17.)

     In explanation of his residual functional capacity

determination, the ALJ stated

               [t]he medical evidence shows the
          claimant has a history of lumbar stenosis at
          L4-5, status post laminectomies and bilateral
          foraminotomies at L4-5, status post right
          shoulder arthroscopy with subacromial
          decompression, and diabetes mellitus.
          However, in February, 2006, it was reported
          that motor strength in the lower extremities
          was 5/5, there was no subjective loss to
          light touch, and straight leg raising was
          negative. Also, in February, 2006, it was
          noted that the claimant underwent pain
          management and there was no evidence of motor
          or sensory deficits and the claimant was
          ambulating well. Further, the claimant
          underwent an MRI of the right shoulder and it
          was noted that although there was a partial
          tear and joint effusion, there was only small
          joint effusion noted, marrow signal was
          homogeneous, the biceps tendon was properly
          seated within the groove, and the glenoid

                              6

labra appeared to be intact (Exhibit 2F). The claimant underwent an EMG examination in April, 2006, and Dr. Thomas O. Pearson, M.D., reported that although the claimant had S1 radiculopathy bilaterally on the left, it was only mild, and the right side was normal (Exhibit 1F). By May 2006, it was noted that the claimant had normal neurovascular status in the extremities following right shoulder impingement surgery (Exhibit 3F). By July, 2006, it was reported that the claimant was doing excellent, with normal range of motion, and no pain or discomfort (Exhibit 4F). In October, 2006, it was noted that the claimant had no gross abnormalities in the extremities and straight leg raising was negative bilaterally following a lumbar laminectomy, foraminotomies, and decompression (Exhibits 5F, 6F). Later, in November, 2006, it was reported that the claimant was doing extremely well, with no pain or problems down her legs, and only minimal discomfort in her back, which continued to be reported several months afterward (Exhibit 7F). Finally, it is noted that the claimant has not required aggressive medical treatment, frequent hospital confinement/emergency room care or further surgical intervention for her conditions notwithstanding her allegations of totally debilitating symptomatology.

 The Administrative Law Judge notes that Dr. Marianne Shaw, M.D. reported in April, 2008, that claimant suffered from diabetic neuropathy, with additional studies to follow (Exhibit 9F). However, it is noted the medical evidence prior to September 30, 2006, the claimant's date late insured, does not contain objective signs, symptoms, or laboratory finding to establish the presence of this impairment prior to expiration of the claimant's date last insured and period of coverage for this particular claim.

 The Administrative Law Judge has also considered the claimant's subjective complaints in accordance with Regulations 404.1529 and 416.929, and Social Security

7

Ruling 96-7p. In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or symptoms.

Second, once an underlying physical or mental impairment(s) that could be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are not consistent with the above residual functional capacity assessment.

The claimant reported she experiences arthritis, diabetes, and nerve damage. In addition, the claimant reported that she is unable to work because she is unable to sit or stand very long. (Exhibit 1E).

However, the claimant's self-reported activities of daily living are inconsistent with an individual experiencing totally debilitating symptomatology. The claimant

8

reported she is unable to care for all of her personal needs without difficulty, prepare meals, do some cleaning, do laundry, drive, shop, pay bills, count change, handle a savings accout, and use a checkboook/money orders (Exhibit 4E). The Administrative Law Judge also notes that there is no evidence of any significant disuse muscle atrophy of the extremities on physical examination, which suggests the claimant moves about on a fairly regular basis notwithstanding her allegations of totally debilitating symptomatology.

The clinical and objective findings are also inconsistent with an individual experiencing totally debilitating symptomatology. The record is devoid of any evidence showing a significant degree of muscle atrophy, muscle spasm, a motor or sensory loss, reflex abnormality, reduced range of motion of the spine or extremities, or a gait disturbance. Moreover, there is no evidence of disc herniation, spinal stenosis, nerve root impingement, arachnoiditis or other significant degenerative/arthritic abnormality of the spine or extremities to substantiate the claimant's allegations of chronic pain.

In terms of treatment, the claimant reported she takes the medications as set forth in Exhibit 8E in the dosages indicated. However, there is no evidence that the claimant experiences significant side effects from her medications or that her medications have been frequently changed or the dosages altered due to side effects and/or ineffectiveness. Likewise, there is no evidence the claimant has been prescribed other pain/treatment modalities such as a Tens unit, back brace, bed board, cervical collar, or an assistive device for ambulation; and no medical source of record has referred the claimant to a pain management clinic notwithstanding her allegations of chronic pain. Finally, it is noted that the claimant has not required aggressive medical treatment, frequent

9

> hospital confinement/emergency room care or
> surgical intervention for her condition
> notwithstanding her allegations of totally
> debilitating symptomatology.

(R. 13-15.)

As noted above, the ALJ ultimately decided that Plaintiff had the residual functional capacity to perform light work with limitations (R. 13) and that jobs exist in the national economy that Plaintiff could have performed (R. 16). Thus, he determined that Plaintiff had not been under a disability as defined in the Social Security Act from August 1, 2006, through September 30, 2006, the date last insured. (R. 17.)

On or about July 14, 2010, Plaintiff filed a timely request with the Social Security Administrations Appeals Council for review. (R. 5.) In a Notice dated December 15, 2011, the Appeals Council denied Plaintiff's Request for Review (R. 1), making the ALJ's decision the decision of the Commissioner.

Plaintiff filed this action on June 11, 2012. (Doc. 1.) She filed her brief in support of the appeal on September 20, 2012, in which she asserts the bases for relief noted above: 1) the RFC is not based on substantial evidence (Doc. 6 at 7); and 2) the Vocational Expert's testimony did not constitute substantial evidence because the ALJ's hypothetical did not adequately portray the full extent of Plaintiff's limitations (*id.* at 14). Defendant filed his opposition brief on September 5, 2012. (Doc. 7.) With the filing of Plaintiff's reply brief (Doc. 8) on November 2, 2012,

10

this matter became ripe for disposition.

## **II. Disability Determination Process**

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S.

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

11

521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R. 16-17.)

### **III. Standard of Review**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). A reviewing court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)); *see*

12

*also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Therefore, we will not set aside the Commissioner's final decision if it is supported by substantial evidence, even if we would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

### **IV. Discussion**

#### *A. General Considerations*

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). These proceedings are not strictly adversarial, but rather the Social Security

13

Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

Finally, the Third Circuit has recognized that it is necessary for the Secretary to analyze all evidence. If he has not done so and has not sufficiently explained the weight he has given to all probative exhibits, "to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky*, 606 F.2d at 407. In *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981), the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected. "Since it is apparent that the ALJ cannot

14

reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Only where the ALJ rejects conflicting probative evidence must he fully explain his reasons for doing so. *See*, *e.g.*, *Walker v. Comm'r of Soc. Sec.*, 61 F. App'x 787, 788-89 (3d Cir. 2003) (citing *Kent v. Schweiker*, 710 F.2d110, 114 (3d Cir. 1983)). Further, the ALJ does not need to use particular language or adhere to a particular format in conducting his analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

## B. *Plaintiff's Alleged Errors*

As set out above, Plaintiff asserts the ALJ erred because his RFC determination is not based on substantial evidence (Doc. 6 at 7) and he did not pose an adequate hypothetical to the vocational

15

expert (*id.* at 14). We conclude that neither alleged error provides a basis to grant Plaintiff's appeal of the Commissioner's decision.

## *1. Residual Functional Capacity Determination*

Plaintiff asserts the ALJ's residual functional capacity determination that she was able to do light work with limitations was not based on substantial evidence for three reasons: 1) the evidence shows she was physically limited to sedentary work since her alleged onset date of August 1, 2006 (Doc. 6 at 7); 2) Plaintiff's limited ability to perform light work places her exertional capacity between two rules that direct opposite conclusions, a situation which justifies a finding of "disabled" (*id.* at 9); and 3) the ALJ's determination that Plaintiff was capable of performing some degree of light work is not based on substantial evidence (*id.* at 12).

In support of her assertion that she was limited to sedentary work during the relevant time period, Plaintiff points to the spinal surgery which she underwent on October 16, 2006--sixteen days after her date last insured--as indicative that she was disabled by her pain and related symptoms resulting from degenerative disc disease as of September 30, 2006 "and at the very least limited to sedentary work." (Doc. 6 at 8.) Defendant responds that Plaintiff cites no medical opinion to support this conclusion and that no such opinion exists in the record. (Doc. 7

16

at 6.) Plaintiff does not point to any medical evidence with her reply, relying rather on her testimony that her lifting capacity with her past relevant work was limited--in the case of the box packer position she was limited to lifting ten pounds. (Doc. 8 at 2 (citing R. 32, 48-49).)

We conclude Plaintiff has failed to show that the ALJ's determination that she was capable of light work with limitations is not based on substantial evidence. First, we note that Plaintiff states she "was doing light work in the past" (Doc. 8 at 2) although the ALJ found her past relevant work to be of medium exertion (R. 16). Plaintiff's only testimony regarding the ten pound weight limit (which would limit her to sedentary work (*see* R. 49)) was in response to the ALJ questioning her about the heaviest weight she lifted in the box packer position. (R. 32.) She responded that "[i]t varied. The parts that I bagged was [sic] plastic. I'm going to say maybe ten pounds." (R. 33.)

As Defendant notes in citing *Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002), "an allegation of reduced functional capacity, without medical evidence or diagnostic opinion supporting the allegation, [does] not trigger a duty on the part of the ALJ to incorporate the limitation in the hypothetical question to the vocational expert." (Doc. 7 at 6.) Plaintiff's equivocal response to the ALJ's question does not undermine the evidence of record indicating Plaintiff did well post-surgically. As noted by the

17

ALJ, "in November, 2006, it was reported that the claimant was doing extremely well, with no pain or problems down her legs, and only minimal discomfort in her back, which continued to be reported several months afterward." (R. 14 (citing Exhibit 7F).) The cited exhibit includes correspondence from her surgeon, Barry B. Moore, M.D., to another physician dated August 9, 2007, in which Dr. Moore states "she has done extremely well only ten months after her surgery. Therefore, I will dismiss her from our practice." (R. 228.)

This evidence undermines Plaintiff's report of her post-surgical condition. For example Plaintiff's statement that in the summer of 2007 she could be on her feet for ten to fifteen minutes and then pain would shoot down her left leg and her sleep was interrupted due to pain (R. 41-42) is not consistent with the medical reports from the same time period.

Given the evidence of record and lack of support for Plaintiff's position, we conclude Plaintiff's weight restriction argument fails to show the ALJ's RFC determination was not based on substantial evidence. This conclusion applies equally to Plaintiff's similar argument that the ALJ's determination that she was capable of performing some degree of light work is not based on substantial evidence.

Plaintiff also argues that the ALJ's residual functional capacity determination acknowledges that her ability to perform

18

light work is significantly reduced, therefore placing her exertional capacity between two rules that direct opposite conclusions which justify a finding of "disabled." (Doc. 6 at 9.) Defendant responds that Plaintiff misconstrues the Social Security Ruling on which she relies, SSR 83-12, which indicates a vocational expert should be consulted when an individual must alternate between sitting and standing to determine the effect of the sit/stand option on the occupational base. (Doc. 7 at 7-10 (citing SSR 83-12 at 3-4).) Because Plaintiff does not reply to the argument and because we conclude the ALJ proceeded in accordance with SSR 83-12, we will not discuss this issue further.

### *2. Vocational Expert Hypothetical*

Finally, Plaintiff contends that the VE's testimony did not constitute substantial evidence because the ALJ's hypothetical did not adequately portray her limitations, particularly her lifting limitation. (Doc. 6 at 14.) Defendant responds that the ALJ's question fully accommodated all of Plaintiff's *credibly established limitations* as required by *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). (Doc. 7 at 11.) Plaintiff replies that the hypothetical incorrectly assumed she was capable of lifting up to twenty pounds with frequent lifting of ten pounds. (Doc. 8 at 3.)

As set out above, *Burns* establishes that medical evidence or diagnostic opinion is required to support an allegation of reduced

19

functional capacity which would trigger a duty on the part of the ALJ to include the limitation in the hypothetical posed to the VE. 312 F.3d 113, 129-30. Here Plaintiff provides neither. Therefore, the ALJ was under no obligation to include the suggested limitation in his hypothetical to the VE, and Plaintiff's argument fails.

## **V. Conclusion**

For the reasons discussed above, Plaintiff's appeal of the Commissioner's decision is denied. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy<br>
RICHARD P. CONABOY<br>
United States District Judge

DATED: December 4, 2013